May it please the court. My name is Eitan Kasalyanich and I am representing Sarah May in this appeal. May has been unable to perform full-time work since July 2006 as a result of the functional effects of her severe mental impairments as well as her impaired hearing ability. The ALJ erred here by failing to properly evaluate or improperly rejecting the medical findings and opinions of numerous medical providers and examiners including especially Dr. Zolnikov and Dr. Wheeler. Dr. Zolnikov and Dr. Wheeler both of whom are psychologists opined that May has many significant mental functional limitations but the ALJ entirely failed to evaluate Dr. Zolnikov's opinion or any of the other evidence dated prior to September of 2016. September 2016 is the application date and the current claim. There was another claim that Ms. May had filed not long before that and when the time came to do one of her appeals she missed the deadlines and so started over. Now that prior claim could have been reopened for any reason. It was less than 12 months since the denial and even though it could have been reopened for any reason the ALJ refused to do so. Now it's his prerogative to do that even though it appears rather arbitrary and capricious here for him not to do it. It also appears to be a violation of SSR 915P which says that a person's mental illness is the reason they're unable to file an appeal. They're required to reopen. But counsel, the ALJ said he found no basis for reopening and I don't see that the evidence that you've presented establishes that your client's diagnosed mental illnesses were something that would have prevented her from taking an appeal. So I have a hard time seeing your argument that we need to reverse the ALJ on this issue. I am not asking the court to reverse the ALJ on the reopening issue. That's really something that needs to be fixed by an ALJ. I'm pointing out though that there was medical evidence in the file of mental treatment for severe mental illness during that time frame but even if there wasn't he could have reopened. He could have reopened by just saying I'm reopening. You asked me to reopen and I'm reopening. Under 12 months, it's a very broad thing and Social Security has lots of rules that say that if you can reopen, you're supposed to reopen. But they don't enforce them. The courts can't enforce that. So I think it's really... So Mr. Yannich, you're either asking us to find error or you're not. And I think you just said you're not asking us to find error in denying reopening. Have I got that right? Yes. In that case, I have a question if I could. I don't mean to be talking over you. I think there's a little bit of a delay. So forgive me. But in that case, if you're not asking us to revisit the decision to not reopen, then I have a question about the posture. Because in other circumstances where we've seen a prior unsuccessful application and then an opinion like, in this case, Dr. Zolnikov, that predates the onset date, we've heard arguments that there's a presumption of continuing non-disability and medical opinions on either side have been considered for purposes of determining whether that presumption is rebutted. This case seems to come to us in a different posture. Could you speak to that? None of that arises here because race judicata doesn't apply because she was not represented in the prior claim. So none of that even comes into play. The issue that I'm bringing before you today isn't should you be reopening the prior claim. It's was it acceptable for the ALJ to completely disregard all of the evidence that is dated prior to the application date here? So even evidence... And so if you're not relying on race judicata, that's the difficulty. If you're not relying on that and a presumption, because that would allow you to argue that the evidence should have been considered. But you seem to not want to take that into account either. So... Because Dr. Zolnikov's opinion does predate the onset date, right? It does. Well, no. Application date. It does not predate the onset date. I'm not trying to put words in your mouth. I am trying to put some legal skeleton around your argument. So maybe I should get out of your way and you can take your best shot at telling me why it was error to not consider this opinion. Okay. It was error because an ALJ is required to base his decision on all of the evidence of record. This is some of the evidence that was a record. This was actually evidence that was never considered by an ALJ. So counsel, even if we were to agree as a matter of law, and I'm not sure I do, but even if we were to agree that the ALJ needed to address Dr. Zolnikov, the failure to do it can still be harmless error, correct? That is correct. And the ALJ gave reasons for rejecting Dr. Wheeler's report, correct? That is correct. So what's in Dr. Zolnikov's that isn't in Dr. Wheeler's? Well, then you're asking me essentially what I would like to do then is to point forward to Dr. Wheeler's report and that the ALJ did not state any valid reason, any legitimate reason for rejecting Dr. Wheeler's evaluation. So I know you're going to get to that in a second. So would you agree that if the reasons for rejecting Dr. Wheeler's report were valid, then the failure to address Dr. Zolnikov was harmless error? I don't agree because if you have one psychologist that says a person has these limitations and then you have a second one that says the same thing, that's more significant than having just one that says something. How are you going to distinguish the Molina Astru case? Now that case did involve only lay witness testimony, but it was a harmless error case. Well, because if in this case, if the court credits as true, the court finds that he erred in rejecting Dr. Wheeler's opinion, that is a harmful error because a reasonable ALJ who didn't make that mistake could have reached a different conclusion. I mean, that's the rule, but I know that Dr. Zolnikov's exam was 23 months before and he did raise other issues, but PTSD, depression, psychosis, panic disorder, which were different. Now, I suppose arguably you could say that at the time Wheeler examined the Ms. May, that those things didn't exist or they did exist. I mean, I'm still having trouble with the harmless error issue. Okay. May has very severe schizophrenia. She hears voices and these are things that the ALJ, you can't disregard this kind of medical evidence lightly and that's exactly what he did here. His reasons, you have to look at all of the reasons that the ALJ gave for rejecting Dr. Wheeler's opinion and not one of them withstands careful scrutiny. So counsel, I've read the medical records and one of the ALJ's reasons for rejecting Dr. Wheeler is it's unsupported by the mental health treatment records, which show that claimant's mental functioning at various times is generally within fair to normal limits and that is what the records say. I mean, there are records that are to the contrary, but there are substantial records that say that at the relevant time she was functioning within fair to normal limits. Why is that something the ALJ can't rely on? Because when a person's symptoms wax and wane the way that hers do, the voices never leave. Her functionality varies somewhat, but her ability to leave her home did not vary much throughout the entire timeframe we're looking at here. And there's so much significant evidence from the prior timeframe that the ALJ never reviewed. Dr. Dula is another psychologist, who might be a psychiatrist, who found that she was hearing voices. There's a lot of very powerful evidence that the ALJ never considered. He says he considered it. Show me. I don't see any discussion, no articulation whatsoever of his consideration of any of that earlier ever. Mr. Yannich, you're over your time. So we're going to hear from opposing counsel. You can plan accordingly. We'll put two minutes on the clock for you to have rebuttal because we took quite a bit of your time with questions. Can you hear us now? I can. I disappeared on you. Just for a second. I hope you just heard that we're going to hear from opposing counsel and you can plan. We're going to give you two minutes for rebuttal when you come back. Thank you. You're welcome. All right, we'll hear from counsel. Are you there? Yes, I am, your honor. Oh, great. For a minute I thought you were frozen. Go ahead. May it please the court, Jordan Goddard appearing on behalf of the Commissioner of Social Security. Good afternoon. Sarah May certainly has limitations from her mental impairments, namely schizophrenia and anxiety disorder. However, the ALJ reasonably found that those impairments were under control to the point where she could perform work under very limited circumstances, something that didn't require much interaction with other people and that was simple and and the evidence supports this. While opposing counsel portrays her symptoms as severe and her schizophrenia is severe, Judge Bennett correctly summarized the record earlier when he noted that the medical evidence didn't really support that characterization. She certainly has symptoms and they are limiting and would prevent her from doing a number of different jobs that require high levels of social interaction or that require her to do complex tasks or make complex judgments. Let me ask you, Mr. Goddard, let me ask you a question about that though. Does all the evidence that is in the record establish that that she could in fact all the time perform functions even at a minimal level? It seems to me in my reading of the record that that isn't conclusive. Well, your honor. Well, I guess we need to talk about Dr. Zolnikoff and why why was why or why not it was appropriate to consider it? I mean if it was he should have considered it. He certainly didn't mention it. So why? Yes. Why was it? Why should we sustain that? First of all, is it an error that he should have considered it or at least mentioned it and then discounted it and then assuming that it was an error, why is it harmless? Yes, Judge Silver. First of all, it was not an error because for one, the opinion was rendered well before the relevant date or excuse me the application date and the relevant period that we're considering a full 11 months before that. And while opposing counsel made the claim that Dr. Zolnikoff's opinion did not predate the alleged onset date, that is simply false, your honor. And her application may allege that her disability started or that her symptoms became disabling in June of 2016. And this is not a situation where she simply chose a date abutting her previous application which was denied back in January 2016. So this appears to be a conscious decision that May made to identify June 2016 as the point where her symptoms got bad enough to where she couldn't work. Well, Dr. Zolnikoff's evaluation was in October of 2015. So I believe that's seven or eight months before she even alleges she became disabled. So just on the face of her theory of disability that she presented to the agency, Dr. Zolnikoff's opinion is important only for historic purposes. And that's why the record contains evidence that goes back a full year before the relevant period. The agency requires the record to have that evidence in there or to give a longitudinal perspective. But that doesn't mean that evidence that is generated before the time she became disabled is relevant. And I think it's easy to see why an opinion that doesn't even comport with her own theory of disability is not significant and probative evidence. Can I interrupt and just push back on that a bit? I tried to talk to Mr. Yannich about this a bit. I think he's right. Do you agree that res judicata does not apply here? I do not. You do agree? No, I'm sorry. I do not agree with this claim that res judicata does not apply. And I'm not sure. So if you think res judicata does apply, then aren't we in a situation where there would be a presumption of disability, a presumption of continuing non-disability? Forgive me. No, Your Honor. And I apologize if this gets a little bit complicated, but this court has used res judicata in the context of social security disability evaluations in two very distinct ways. And it's easy to get them confused. But there is res judicata in sort of the classic sense of this period has already been evaluated and decided by the agency. What you're referring to, the presumption of continuing disability, which really arose primarily in the Chavez case is what's primarily cited, is called res judicata. I said yes, we're familiar with it. It's been on our calendar this week. So yes, you can. I apologize. Even though it uses the words res judicata, you have to keep in mind that it's not talking about a period that has already been evaluated. So what I am talking about here is actually the classic version of res judicata in that the agency had already decided a previous application as of January 2016. So this falls, this isn't one of those situations where it's after a previously adjudicated period and we have a presumption that arises from res judicata, which is what Chavez deals with. Are the words res judicata anywhere in your brief? I don't believe so. The words reopening are in our brief and I think it's fair to understand that that's what, you know, reopening only makes sense if you're talking about classic res judicata. And so I apologize if we didn't actually use those words, but reopening a prior determination. I'm sorry? I'm saying you did not use those words. So that's why I'm trying to, I'm trying to figure out what your theory really is. And it's, it's very important, at least for my scorecard. So please continue. Yes, our theory is, and I apologize if we were not clear by framing it as a reopening issue, but I think anytime we're talking about reopening a prior decision or a judgment, I mean, I guess I don't know how to understand that through any other lens other than res judicata in a classic sense. And one of the reasons we is for the reason that language in our briefing is for the reason I just laid out that the court has used that term in two very different ways. And it really, it depends which situation you're in, whether it's sort of the classic res judicata, in which case we tend to talk about reopening versus the Chavez presumption that arises from res judicata. We're trying to figure out what your view is about what treatment should be given to this medical, Dr. Zolnikov's opinion in this case. Could you please just articulate that? It does not need to be discussed because it falls under a prior period that has already been adjudicated. And that's based on, and Paul's through, are you saying that as a legal matter? Are you saying that as a factual matter? Judge Silver, I have to confess. I didn't, I'm not quite following. Well, what I'm saying is your question is that I know that you, your position is that it does not need to be considered, but are you saying that it does not need to be considered because even if it was required to be considered, it's harmless air? Are you saying that as a matter of law, it's not required to be considered? It should have been ignored completely. Forget it. Yes, Your Honor. I'm saying our primary argument is that as a matter of law, Dr. Zolnikov did not need to be discussed, but alternatively, if for some reason he did, then the air was harmless for, you know, for the reasons that have already been articulated, as Judge Bennett pointed out under the Molina theory, we have a harmless air. Well, let me ask you this. There are a number of things that Dr. Zolnikov did raise. And I mentioned this with Mr. Janevich, and that's that she had PTSD, depression with psychosis, panic disorder. And also it seems to me that some of the issues raised about by the ALJ to completely disregard Dr. Wheeler was that there were some inconsistencies with other treatment. Can you go through for me and tell me what the inconsistencies were that allowed for the ALJ to basically disregard Dr. Wheeler? Yes. Some of the treatment records that were cited by the ALJ and mentioned in our briefing are the December 2017 mental health treatment note, which I know was generated just a few months after that examination, where the mental status examination results were almost entirely normal. And then that's at ER 571. And then the January 2018 treatment record from the same mental health treatment provider at ER 566. Similarly, a very unremarkable mental status examination. And then at 564, February, the following month, again, very unremarkable mental status examination. So if we look at the treatment records from the mental health providers that are in close proximity to Dr. Wheeler's examination, we see very unremarkable mental status examination results, which as the ALJ pointed out, is actually similar to Dr. Wheeler's own report, which identifies minimal abnormalities on the mental status examination. And in fact, in describing concentration as impaired actually puts a note saying that it was only impaired with doing math problems, but when asked to do language-based concentration tests, like spilling the world forward or backwards, did it without error, implying that it was an issue with math, not concentration. The only other abnormality that's noted is one that Dr. Wheeler expressly describes as the claimant's own self-report, not her observation of responding to internal stimuli. And so under the... Counsel, you're significantly over your time, so please just wrap up if you would. Make sure you respond to Judge Silver's question, but it's time to wrap up, please. Absolutely. So we can see that while the evidence could be viewed in more than one way, the law defers to the ALJ's reasonable interpretation of the evidence in those circumstances. And that's what we have here, which is well supported by the opinions of Dr. Kovell and Dr. Flickstein. So I'd ask you to affirm. Thank you, counsel. Mr. Yannich, we're going to put two minutes on the clock for you, so you can come back and wrap up for us. I'll tell you, if it's helpful to you, I still have real concerns about a consistent application of the prior adverse determination and how Dr. Zolnaff's opinion should be considered and why you think we ought to find error there. Okay. In a nutshell, it's Lester. Lester states that res judicata does not apply if the decision, the prior determination, it was made where the person was not represented by counsel. So... Mr. Yannich, that's the part that I do understand, but it seems to me that if she was unrepresentative, she shouldn't be in a less favorable position than she would if she'd had representation and res judicata applied. Oh, well, I think she was actually in a more favorable position because of it, because the Chavez line of decisions and the way it's been applied by the Social Security Administration only holds that res judicata applies, it's a presumption of continuing non-disability. And so, if you were applying it to the prior time period, it would mean, well, they found her not disabled before, we have to find her not disabled again. Well, we know that. Mr. Yannich, we've had this, that circumstance on our calendar two or three times this week, that issue is before us. But it seems to me, if I can just shortcut this, it seems to me if she found herself in that circumstance, then your argument would be it's a rebuttable presumption. So Dr. Zolnikoff's opinion needs to have been considered to determine whether she's rebutted the presumption. I don't hear you arguing that. I see what you're saying. And you're right. I never looked at res judicata as even applying here in any way, shape, or form. I looked at it as this is evidence. We're not trying to reopen that old period. We'd like to, but that's up to an ALJ. My point is that for the ALJ to make a evidence that predates the current time period, including Dr. Zolnikoff's opinion and all the treatment notes subsequent to that, which are all listed in my brief, with regard to the onset date, I took that from the ALJ's decision. The ALJ said that she was alleging disability since July 15th of 2006. And maybe I didn't, I should have looked at the original source she was, did he get that wrong? But that's the date that he put in his decision. So I thought that was the date we were working with. Finally, the last thing I will say is that with regard to her function, we didn't talk about her testimony, but read her testimony. This is a woman who is afraid that people are listening to her in the bathroom. She testified that she's in bed most of the time. I mean, this is not a functional person. And I think Judge Silver is correct. It's not a question of whether or not she can go out there and do some kind of job for a couple of hours, which she's doing. The question is, can she do it eight hours a day, five days a week? And she's just not functional enough to do that. Thank you, counsel. If there's nothing else from other members of the panel? No. Okay. Thank you both very much. And thank you for your very helpful arguments, counsel, and for your patience with our questions. We'll go on to the next case on the calendar.
judges: Christen, Silver, Bennett